JUDGE SULLIVAN                 11 CV      0642

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELAINE CYPHERS,                )<br><br>Individually and on Behalf of Others )<br>Similarly Situated,                )<br><br>PLAINTIFF,                )<br><br>v.                )<br><br>TOSHIBA AMERICA,                )<br>INCORPORATED, and TOSHIBA )<br>AMERICA NUCLEAR ENERGY )<br>CORPORATION,                )<br><br>DEFENDANTS.                ) | CLASS ACTION COMPLAINT<br><br><br>___ Civ. _____ (    )<br><br><br><br>**JURY TRIAL DEMANDED** |

*(stamp: RECEIVED JAN 31 2011 U.S.D.C. S.D.N.Y. COMPLETED)*

## CLASS ACTION COMPLAINT

Plaintiff Elaine Cyphers ("Plaintiff" or "Class Representative" or "Ms. Cyphers"), through her attorneys Sanford Wittels & Heisler, LLP, brings this action in her individual capacity and on behalf of women defined below.    Based on nonconfidential, nonprivileged information concerning herself and her own acts, and upon information and belief, Plaintiff Cyphers alleges as follows.

### I.    NATURE OF THE CASE

1.    Ms. Elaine Cyphers, Toshiba's Human Resources Manager and the highest ranking U.S. human resources employee at Toshiba America Nuclear Energy Corporation ("TANE") when she was hired in 2008, seeks to redress and bring an end to systemic, companywide, gender discrimination by Defendants Toshiba America, Inc. and Toshiba America Nuclear Energy Corporation (jointly, "Toshiba" or "Defendants") against their female employees.

2.     Although Toshiba publicly touts its commitment to gender diversity and its efforts "to promote more female employees to managerial positions," Toshiba's diversity record reveals an astounding lack of women in leadership positions companywide.

3.     Upon information and belief, only one woman serves as an executive officer, and no women serve as board members of Defendants Toshiba America, Inc. or Toshiba America Nuclear Energy Corporation ("TANE").

4.     The paucity of women in leadership at Toshiba—six full years after Toshiba created a "Gender Equality Office"—extends to lower management as well. TANE, for example, has only *one* female manager: Plaintiff Elaine Cyphers. According to the "Respect for Diversity" webpage of Toshiba Corporation, the parent company of Toshiba America, Inc., only 211 out of 6,273 Toshiba Corporation managers internationally—*approximately 0.3 percent*—are female. On information and belief, the percentage of female managers at Toshiba America, Inc. is not significantly greater.

5.     The absence of women from leadership positions throughout Toshiba is both a symptom and a cause of ongoing and pervasive discrimination by Toshiba against its female employees.

6.     Inside Toshiba, women are not seen as equals. If a female employee does not conform to typical gender stereotypes or is not submissive towards male employees, she is labeled insubordinate, criticized, and retaliated against.

7.     Moreover, if a Toshiba employee complains to management about gender discrimination, that employee is subjected to heightened scrutiny, criticism, and retaliation. Toshiba handles discrimination complaints by conducting sham

objective criteria to evaluate candidates for an Accounting Analyst position. Mr. Tamura instead announced his desire to hire a candidate who lacked the required experience but was, according to Mr. Tamura, a "submissive woman."

12.     When General Counsel DiSalvo took Ms. Cyphers's statement concerning Mr. Tamura's discriminatory conduct, he warned her that she would suffer harm for speaking out. "You need to think what you are trying to get out of this," he said. "If you are going to take a shot at the King, you have to shoot to kill." Mr. DiSalvo subsequently terminated the investigation and took no action on the complaint.

13.     After this incident, Ms. Cyphers was unreasonably criticized, denied a promotion, and severely retaliated against by Toshiba. Mr. Tamura deprived her of private office space; closely monitored her e-mails, business expenses, and physical movements; and oversaw an unprecedented and unfair performance evaluation process in June 2010 that finally caused Ms. Cyphers to take medical leave to deal with the accumulated stress, anxiety, and depression brought on by Toshiba's actions against her.

14.     Toshiba's ongoing discriminatory conduct violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, as amended ("Title VII"), and the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA").

15.     To redress Toshiba's pervasive and discriminatory employment policies, practices and/or procedures, Ms. Cyphers seeks, on behalf of herself and the Class she seeks to represent, declaratory and injunctive relief; back pay; front pay; nominal, liquidated, and punitive damages; and attorneys' fees, costs and expenses.

16.     Ms. Cyphers also brings individual claims against Toshiba for damages stemming from retaliation and intentional and negligent infliction of emotional distress.

## II.   JURISDICTION AND VENUE

17.   This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action is based on violations of Title VII and the EPA, which are federal statutes.

18.   Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)(3) and (c) because the Corporate Defendants reside and are subject to personal jurisdiction in this District.

19.   The Southern District of New York is the most logical forum in which to litigate the claims of the Class Representative and the proposed Class. Defendant Toshiba America, Inc., the parent company, is headquartered in Manhattan. Both Defendants conduct business in this District, and the records relevant to Toshiba's discriminatory practices are or were maintained and administered in this District.

## III.   PROCEDURAL HISTORY

20.   Class Representative Elaine Cyphers timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights on or about October 27, 2009. Ms. Cyphers subsequently filed an Amended Charge of Discrimination with the EEOC on January 25, 2011. Ms. Cyphers is in the process of perfecting her right to sue.

## IV.   THE PARTIES

21.   **ELAINE CYPHERS** is the Human Resources Manager at Toshiba America Nuclear Energy Corporation. She is a female "employee" as defined by Title VII and the EPA, and currently resides in Mecklenburg County, North Carolina.

22.   Corporate Defendant **TOSHIBA AMERICA, INC.** is a subsidiary of Tokyo-based Toshiba Corporation, a leading technology manufacturer with 364

consolidated subsidiaries worldwide. Toshiba America, Inc. is the parent company of a group of technology companies that develop, manufacture, and market a wide range of electronic products. Toshiba America, Inc. has approximately 8,000 employees in various offices throughout the United States. Toshiba America, Inc. is incorporated in Delaware and is headquartered at 1251 Avenue of the Americas, Suite 4110, New York, New York 10020.

23.     Corporate Defendant **TOSHIBA AMERICA NUCLEAR ENERGY CORPORATION** (TANE) is a subsidiary of Defendant Toshiba America, Inc. TANE markets and promotes advanced boiling water nuclear power plants and related support and services. TANE is incorporated in Delaware and is headquartered at 3190 Fairview Park Drive, Falls Church, Virginia 22042.

24.     At all relevant times, Defendants Toshiba America, Inc. and TANE were and are "employers" as defined by Title VII and the EPA.

## V.    CLASS ACTION ALLEGATIONS

### A.    Class Definition

25.     The Class Representative seeks to maintain claims on behalf of herself and a Class of which she is a member.

26.     The proposed Class consists of all females who are, or have been, employed by Toshiba in the United States.

### B.    Efficiency of Class Prosecution of Common Claim

27.     Certification of a class of female employees situated similarly to the Class Representative is the most efficient and economical means of resolving the questions of law and fact that are common to the claims of the Class Representative and the proposed

Class.  The individual claims of the Class Representative require resolution of the common question of whether Toshiba has engaged in a systemic pattern and/or practice of gender discrimination against female employees.  The Class Representative seeks remedies to eliminate the adverse effects of such discrimination in her own life, career, and working conditions, and in the lives, careers, and working conditions of the proposed class members, and to prevent continued gender discrimination in the future.

28.     The Class Representative has standing to seek such relief because of the adverse effect that such discrimination has had on her individually and on females generally.  In order to obtain relief for herself and the Class Members, the Class Representative will first establish the existence of systemic gender discrimination as the premise for the relief she seeks.  Without class certification, the same evidence and issues would be subject to relitigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

29.     Certification of the proposed Class is the most reasonable and efficient means of presenting the evidence and arguments necessary to resolve such questions for the Class Representative, the Class Members, and Toshiba.

C.      **Numerosity and Impracticability of Joinder**

30.     The Class that the Class Representative seeks to represent is so numerous that joinder of all members is impracticable.

D.      **Common Questions of Law and Fact**

31.     The prosecution of the claims of the Class Representative will require the adjudication of numerous questions of law and fact common to her individual claims and those of the Class she seeks to represent.  Common issues of law include, *inter alia*:

(a) the proper standards for proving a pattern and/or practice of discrimination by Toshiba against its female employees; (b) whether Toshiba has engaged in unlawful, systemic gender discrimination in its compensation, selection, promotion, advancement, and discipline policies, practices and/or procedures, and in the general terms and conditions of work and employment; and (c) whether Toshiba is liable for a continuing, systemic violation of Title VII and/or the EPA.

32.     Common questions of fact include, *inter alia*, whether Toshiba, through its policies, practices and/or procedures: (a) compensated female employees less in salary, bonuses, and other benefits than comparably situated male employees; (b) precluded or delayed the selection and/or promotion of female employees into higher level jobs; (c) subjected females to differential treatment, including, but not limited to, less preferable work assignments, inequitable evaluations, and stricter discipline; and/or (d) engaged in a pattern and practice of failing to take prompt and effective action to remedy the gender discrimination in its workplace.

33.     The employment policies, practices and/or procedures to which the Class Representative and the Class Members are subject are established at Toshiba's corporate level and apply uniformly to all Class Members throughout the country. These employment policies, practices and/or procedures are not unique or limited to any department. Thus, they affect the Class Representative and proposed Class Members no matter which judicial district, division, or position they work in.

34.     Throughout the liability period, a disproportionately large percentage of the managers and supervisors at Toshiba have been male.

35.   Discrimination in selection and advancement occurs as a pattern and practice throughout all levels and all divisions of Toshiba. Selection and advancement opportunities are driven by personal familiarity, subjective decision-making, preselection, and interaction among male managers, supervisors, and subordinates, rather than by merit or equality of opportunity. As a result, male employees have advanced and continue to advance more rapidly to better and higher paying jobs than female employees.

36.   Toshiba's policies, practices and/or procedures have had an adverse impact on females seeking selection for, or advancement to, better and higher paying positions. In general, a higher level of job classification correlates with a lower percentage of female employees holding those positions.

**E.   Typicality of Claims and Relief Sought**

37.   The claims of the Class Representative are typical of the claims of the proposed Class. The Class Representative asserts claims in each of the categories of claims she asserts on behalf of the proposed Class. The relief she seeks for herself is also typical of the relief sought on behalf of the proposed Class.

38.   The Class Representative is, like the members of the proposed Class, a female employee who has worked for Toshiba during the liability period.

39.   Discrimination in selection and advancement affects the compensation of the Class Representative and all of the Class Members in similar ways.

40.   Differential treatment between male and female employees occurs as a pattern and practice throughout all levels and departments of Toshiba. Toshiba's predominantly male managers hold female employees, including the Class Representative and Class Members, to stricter standards than male employees, and thus, female

employees often receive lower performance appraisals than males for performing at the same level. Female employees are disciplined, formally and informally, more frequently and severely than their male counterparts. Additionally, male employees more often receive desirable work assignments and other preferential treatment.

41.     The Class Representative has complained to Toshiba's management about gender discrimination. Company investigations into these complaints have been inadequate and/or superficial. The Class Representative and the Class Members have been affected in the same ways by Toshiba's failure to implement adequate procedures to detect, monitor, and correct this pattern and practice of discrimination.

42.     Toshiba has failed to create adequate incentives for its managers to comply with equal employment opportunity laws regarding each of the employment policies, practices and/or procedures referenced in this Complaint, and has failed to adequately discipline its managers and other employees when they violate the antidiscrimination laws. These failures have affected the Class Representative and the Class Members in similar ways.

43.     The relief necessary to remedy the claims of the Class Representative is exactly the same as that necessary to remedy the claims of the proposed Class Members. The Class Representative seeks the following relief for her individual claims and for those of the members of the proposed Class: (a) a declaratory judgment that Toshiba has engaged in systemic gender discrimination against female employees by paying female employees less than their male counterparts, denying female employees promotions into better and higher paying positions, limiting female employees' employment opportunities to lower and less desirable classifications, and exposing female employees to differential

treatment; (b) a permanent injunction against such continuing discriminatory conduct; (c) injunctive relief which effects a restructuring of Toshiba's transfer, training, performance evaluation, compensation, work environment, and discipline policies, practices and/or procedures so that females will be able to compete fairly in the future for promotions and assignments to better and higher paying classifications with terms and conditions of employment traditionally enjoyed by male employees; (d) equitable relief which effects a restructuring of the Toshiba workforce so that females are advanced into higher and better paying classifications that they would have held in the absence of Toshiba's past gender discrimination; (e) back pay, front pay, and other equitable remedies necessary to make female employees whole from the Toshiba's past discrimination; (f) compensatory damages; (g) punitive and nominal damages to deter Toshiba from engaging in similar discriminatory practices in the future; and (h) attorneys' fees, costs, and expenses.

**F.   Adequacy of Representation**

44.   The Class Representative's interests are coextensive with those of the members of the proposed Class.  The Class Representative seeks to remedy Toshiba's discriminatory employment policies, practices and/or procedures so that females will not receive disparate pay and differential treatment.

45.   The Class Representative is willing and able to represent the proposed class fairly and vigorously as she pursues her similar individual claims in this action.

46.   The Class Representative has retained counsel who are qualified, experienced, and able to conduct this litigation and to meet the time and fiscal demands required to litigate an employment discrimination class action of this size and

complexity. The combined interests, experience, and resources of the Class Representative and her counsel to litigate competently the individual and class claims at issue in this case clearly satisfy the adequacy of representation requirement of Federal Rule of Civil Procedure 23(a)(4).

**G.      Requirements of Rule 23(b)(2)**

47.    Toshiba has acted and/or refused to act on grounds generally applicable to the Class Representative and the proposed Class.

48.    Toshiba has acted on grounds generally applicable to the Class Representative and the proposed Class by adopting and following systemic policies, practices and/or procedures that are discriminatory on the basis of gender. Gender discrimination is Toshiba's standard operating procedure rather than a sporadic occurrence.

49.    Toshiba has also refused to act on grounds generally applicable to the Class Representative and the proposed Class by, *inter alia*: (a) failing to pay female employees on par with similarly situated male employees; (b) refusing to adopt and apply selection, performance, evaluation, compensation, and discipline policies, practices and/or procedures which do not have a disparate impact on, or otherwise systemically discriminate against females; and (c) refusing to provide equal terms and conditions of employment for female employees.

50.    Toshiba's systemic discrimination and refusals to act on nondiscriminatory grounds justify the requested injunctive and declaratory relief with respect to the Class as a whole.

51.    Injunctive and declaratory relief are the predominant relief sought in this case. Entitlement to declaratory and injunctive relief flows directly and automatically from proof of systemic gender discrimination by Toshiba. In turn, entitlement to declaratory and injunctive relief forms the factual and legal predicate for recovery by the Class Representative and Class Members of monetary and nonmonetary remedies for individual losses caused by the systemic discrimination, as well as their recovery of nominal and punitive damages.

H.    **Requirements of Rule 23(b)(3)**

52.    The common issues of fact and law affecting the claims of the Class Representative and proposed Class Members—including, but not limited to, the common issues identified in paragraphs 31-36 above—predominate over any issues affecting only individual claims.

53.    A class action is superior to other available means for fairly and efficiently adjudicating the claims of the Class Representative and members of the proposed Class. The cost of proving Toshiba's pattern and practice of discrimination makes it impracticable for the Class Representative and members of the proposed Class to pursue their claims individually.

VI.    **CLASS CLAIMS**

54.    The Class Representative and the proposed Class have been subjected to a systemic pattern and practice of gender discrimination involving practices which have had an unlawful disparate impact on them and their employment opportunities at Toshiba. Toshiba discriminates against its female employees by, among other things: (a) applying employment policies and practices in a discriminatory fashion; (b) failing to

pay women salaries and bonuses equal to those of men who perform substantially similar and/or comparable work; (c) segregating women into lower grade level positions with less pay and promotion opportunities than are enjoyed by men who perform substantially similar and/or comparable work; and (d) favoring men over women for promotion.

55.     Toshiba's systemic, discriminatory practices violate Title VII and the Equal Pay Act.

56.     Toshiba's application of employment policies, practices and/or procedures incorporate the following discriminatory practices: (a) relying upon subjective judgments, procedures and criteria which permit and encourage the incorporation of gender stereotypes and bias by Toshiba's predominately male managerial and supervisory staff in making promotion, performance evaluation and compensation decisions; (b) refusing or failing to provide equal employment opportunities to females; (c) refusing or failing to provide female employees with opportunities to demonstrate their qualifications; (d) refusing or failing to establish and/or follow policies, practices, procedures or criteria that reduce or eliminate disparate impact and/or intentional gender bias.

57.     Toshiba's discriminatory employment policies, practices and/or procedures, also include, without limitation, disciplining female employees more frequently and more severely than male employees, and for behavior for which male employees are not disciplined.

58.     Toshiba's policies, practices, and/or procedures relating to advancement and promotion have had a disparate impact on the Class Representatives and members of the proposed Class. These policies, practices, and/or procedures are not valid, job-related, or justified by business necessity.   There are alternative, objective and more valid

14

evaluation procedures available to Toshiba that are more closely related to the actual responsibilities of the positions and that would have less of a disparate impact on women. However, Toshiba has failed or refused to use such alternative procedures.

59.     Toshiba's employment practices, policies, and/or procedures have a disparate impact on the Class Representative and the Class she seeks to represent.  These practices form a part of Toshiba's overall pattern and practice of keeping females in the lower classifications with less desirable terms and conditions of employment.

60.     Because of Toshiba's systemic pattern and practice of gender discrimination, the Class Representative and members of the proposed Class have been adversely affected and have suffered harm, including lost compensation, wages, back pay, and employment benefits.

61.     The Class Representative and Class Members have no plain, adequate, or complete remedy at law to redress the rampant and pervasive wrongs alleged herein, and this suit is their only means of securing adequate relief.  The Class Representative and Class Members are now suffering irreparable injury from Toshiba's unlawful policies, practices and/or procedures as set forth herein, and will continue to suffer unless those policies, practices and/or procedures are enjoined by this Court.

## VII.   INDIVIDUAL ALLEGATIONS

### A.     Ms. Cyphers's Educational and Work Background

62.     Ms. Cyphers is a graduate of Indiana University of Pennsylvania, *magna cum laude,* and earned her Master's in Organizational Development from Bowling Green State University.   She also holds advanced professional certifications in Human Resources ("HR") studies from the Society for Human Resource Management.

Ms. Cyphers has worked in the HR field for more than 27 years and has dedicated her entire career to employee relations, legal compliance, recruiting, compensation, and organizational strategy and development issues.

      **B.**    **Toshiba Hires Ms. Cyphers as Human Resources Manager in 2008**

      63.    Ms. Cyphers joined TANE as its Human Resources Manager in June 2008.

      64.    When Ms. Cyphers was hired, Toshiba told her she would be TANE's "top" HR person and would report directly to TANE's President and CEO, Fuyuki Saito. Toshiba stated that as HR Manager, Ms. Cyphers would have full responsibility for all HR functions. Because TANE was a start-up division, the HR Manager would establish its hiring and recruiting strategies and implement a training program and a performance management and compliance process, all with full support from, and in collaboration with, the parent company, Toshiba America, Inc.

      65.    Ms. Cyphers was particularly qualified for the HR Manager position at TANE because she had previously served as an HR manager for the past 10 years and had established a performance management process for a start-up company.

      66.    Recognizing Ms. Cyphers's skills and experience, TANE—through its Vice President of Human Resources for Toshiba International Division, Chad Reed; Vice President of Business Operations, Mr. Tamura; and Administration Manager, Fumihiko Kimura—induced Ms. Cyphers to accept the job of HR Manager and to relocate from Richmond, Virginia, to Falls Church, Virginia, by representing that she would be the head of HR and would be assigned administrative and professional staff as the division grew.

67.    In reliance on these promises, Ms. Cyphers put her Richmond home up for sale, relocated to Falls Church, and removed herself from consideration for other lucrative job opportunities.

### C.    Toshiba Discriminates Against Ms. Cyphers on the Basis of Her Gender with Respect to Her Compensation

68.    At Toshiba, "band levels" determine salary range, bonus range, and other benefits for salaried employees. Band Level 1 is the most advantageous. According to Toshiba policies, HR Managers with 10 to15 years of experience are placed in Band Level 5, while those with more experience are placed in lower-numbered band levels.

69.    Although Ms. Cyphers had over 25 years of HR experience, she was placed in Band Level 5 when she was hired. Male HR Managers with significantly less experience, however, are placed in superior band levels. Ms. Cyphers witnessed a male manager with only three years of relevant HR experience be promoted to Band Level 4.

70.    Although, from the start of her employment, Ms. Cyphers has performed exceptionally well, Toshiba has consistently compensated her at a lower rate than male employees in Band Level 5 with equal or less experience. Toshiba paid Ms. Cyphers $90,000 in 2008, and $91,800 in 2009 and 2010. On information and belief, Toshiba paid its male Band Level 5 managers—some with 10 years less experience than Ms. Cyphers—approximately $120,000 per year from 2008 to 2010. That means that Ms. Cyphers earned roughly $30,000 (or 25%) less than male employees in the same band level and with significantly less experience.

71.    Ms. Cyphers also witnessed that males at Toshiba received preferential treatment with respect to bonuses. Ms. Cyphers was denied the ability to negotiate her pay when she was hired in 2008, was not offered a hiring bonus, and never received one.

In 2009, when Ms. Cyphers learned that her overall compensation and bonus eligibility were considerably less than her male counterparts with equal or less experience, she inquired about negotiating her pay.  Vice President Tamura told Ms. Cyphers that her salary "is what it is" and was not negotiable.

72.    However, Toshiba negotiates with male employees over salaries and bonuses.  On information and belief, similarly situated male employees at Toshiba were offered and received hiring bonuses.  In fact, Toshiba agreed to a bonus for a male employee who was ineligible to receive one under Toshiba's policy.  Although the male employee was *ineligible* and had less experience than Ms. Cyphers, Toshiba violated its own policy and paid the male employee a bonus that exceeded Toshiba's bonus range for *eligible* employees in that position.

73.    Ms. Cyphers also witnessed that males at Toshiba received preferential treatment with respect to other financial benefits.  On information and belief, under TANE's Relocation Policy, new hires are eligible for Home Sales Assistance, are offered a lump sum payment for expenses, and are eligible for reimbursement of travel, moving, and storage expenses.

74.    Although Ms. Cyphers was eligible under TANE's Relocation Policy for reimbursement of her expenses for relocating from Richmond to Falls Church in 2008, she was denied reimbursement.  When Ms. Cyphers inquired about reimbursement under the Relocation Policy, she was told, "Sorry. Start-up. Tight budget." However, on information and belief, similarly situated male employees received reimbursement under the Relocation Policy.

75.    On information and belief, Toshiba engages in a pattern and practice of

failing to compensate its female employees at the same rate as similarly situated male employees, by paying female employees less than similarly situated male employees with equal or less experience in the same band level, and by placing female employees in lower band levels than male employees who perform the same or similar jobs.

### D.    Toshiba Discriminates Against Ms. Cyphers on the Basis of Her Gender in Denying Her a Promotion

76.    Toshiba promised Ms. Cyphers when she was hired in 2008 that she would be TANE's "top" HR manager and would report directly to Mr. Saito, TANE's President and CEO.  Despite Ms. Cyphers's exceptional performance, she was denied a promotion in 2009 that would have allowed her to remain TANE's "top" HR manager.

77.    In early 2009, Toshiba created the position of "Senior HR Manager," in a supervisory role over Ms. Cyphers.  Toshiba did not publicize the Senior HR Manager position or otherwise inform Ms. Cyphers of the vacancy.

78.    Had Ms. Cyphers learned about the position, she would have applied so that she could be TANE's "top" HR Manager and expand her career and earning potential.

79.    Although Ms. Cyphers deserved a promotion based on her performance, Toshiba denied her a promotion to Senior HR Manager.  Moreover, Toshiba filled the position with a male employee who was less qualified and less experienced than Ms. Cyphers. This male employee was promoted to Senior HR Manager for TANE from the position of HR and Administration Manager for Toshiba America, Inc.'s Administration Department.  On information and belief, the male employee had only three years of HR experience in the United States, no experience establishing HR procedures for a start-up company, and no direct experience implementing HR

compliance procedures or managing staff.

80.     After promoting the male employee to Senior HR Manager, Toshiba stripped Ms. Cyphers of her primary responsibilities as HR Manager and assigned her administrative duties commensurate with those of lower level HR personnel and clerical staff who have less income potential.

81.     On information and belief, Toshiba engages in a pattern and practice of discriminating against its female employees on the basis of gender by denying them promotions that they are qualified for and interested in, and by promoting less experienced, less qualified male employees to those positions.

**E.     Ms. Cyphers Reports Discriminatory Conduct**

82.     In January 2009, Ms. Cyphers advised Toshiba's management of discriminatory conduct by Vice President Tamura during a hiring process.

83.     On January 14, 2009, Ms. Cyphers, Mr. Tamura, Consulting Accountant Michio Orioka, and Office Manager James Hill interviewed five candidates for a permanent accounting analyst position at TANE. The essential requirements for the job were a college degree and five to 10 years of accounting experience in the United States.

84.     Ms. Cyphers had selected the candidates to be interviewed after scrupulously reviewing more than 500 applications and conducting numerous telephone screenings. Mr. Tamura had reviewed and approved her selections.

85.     After the interviews began, Mr. Tamura revealed that he had invited Y.G., a Japanese woman, to interview for the position. By doing so, Mr. Tamura undermined Ms. Cyphers's three-month search, subverted the hiring procedures, and favored an unqualified candidate. Y.G. did not meet the minimum requirements for the position

because she did not have a college degree or any accounting experience in the United States. In fact, had Y.G. been involved in the regular hiring process, she would have been rejected at the first stage.

86.    Although Mr. Tamura vehemently resisted, Ms. Cyphers provided the interviewers with an objective rating system to evaluate the candidates. Using Ms. Cyphers's objective system, a male of African descent received the highest score from Ms. Cyphers, Ms. Orioko, and Mr. Hill. All three agreed that he should be hired.

87.    Mr. Tamura did not participate in assigning the ratings and refused to use the objective rating system. He told the other interviewers that he preferred to hire Y.G. because she was a "submissive woman," and that such women were hard to find, especially in the Greater Washington, DC, area, where Falls Church is located. When Ms. Cyphers attempted to correct him—noting that Y.G. had certainly appeared professional—Mr. Tamura retorted that professionalism had nothing to do with submissiveness.

88.    Mr. Tamura refused to hire the African candidate selected by the interview team. Instead, he instructed Ms. Cyphers to find more candidates from the employment agency that had referred Y.G.

89.    Ms. Cyphers immediately met with Mr. DiSalvo, TANE's General Counsel, and expressed concern that Mr. Tamura's failure to consider the qualified African candidate or to use objective hiring criteria was discriminatory. Two days later, on January 16, 2009, Mr. Hill, the Office Manager, who also served on the interview team, filed a formal complaint with Mr. DiSalvo concerning the interview process.

90.    General Counsel DiSalvo initiated an investigation—but it was woefully

inadequate and in violation of company policy. In a formal statement to General Counsel DiSalvo, Ms. Cyphers corroborated Mr. Hill's complaint. She stated that Mr. Tamura had refused to hire an exceptionally well-qualified candidate of African descent for reasons based on gender and racial stereotypes and preferences. She added that this was not an isolated incident, as Mr. Tamura had engaged in similar conduct in the past.

91.    In response to Ms. Cyphers's statement, General Counsel DiSalvo told her he did not understand why she was supporting Mr. Hill's complaint, and warned her that doing so would harm her career at Toshiba. In addition, General Counsel DiSalvo said, "If you're going to shoot the King, you have to shoot to kill."

92.    Although Ms. Cyphers had fully corroborated Mr. Hill's complaint, Mr. DiSalvo closed the investigation and told Mr. Hill that Ms. Cyphers did not corroborate his complaint.

93.    On information and belief, neither Mr. Tamura nor General Counsel DiSalvo were disciplined for discriminatory conduct or for violations of Toshiba policy. Instead, Toshiba accepted Mr. Tamura's explanation that he terminated the hiring process because he wanted to hire a temporary, contract employee in anticipation of the office's planned relocation to Charlotte, North Carolina, later in 2009.

94.    Mr. Tamura's explanation was pretextual. Before TANE moved to North Carolina, Mr. Tamura hired G.C., a male not of African descent, to fill the permanent accounting analyst position. Unlike the African candidate, G.C. was unqualified for the position because his background, education, and experience were in information technology—not accounting. Indeed, had G.C. been part of the original hiring process, he would have been screened out on the basis of his resume alone. Nonetheless,

Mr. Tamura hired G.C. and unilaterally declared G.C. eligible under TANE's Relocation Policy for financial assistance and reimbursement of his expenses for moving to North Carolina to stay with TANE. G.C. was also approved for relocation expenses for his spouse to move from Seattle, Washington to North Carolina.

95.     On information and belief, Toshiba engages in a pattern and practice of facilitating and perpetuating gender discrimination against its female employees by discouraging employees from reporting or complaining about such discrimination, failing to properly investigate the reports and complaints, and failing to take steps to remedy or prevent the recurrence of gender discrimination made known to Toshiba.

**F.      Toshiba Discriminates Against Ms. Cyphers in the Terms and Conditions of Her Employment, and Retaliates Against Her for Filing an EEOC Charge**

96.     After Mr. DiSalvo's perfunctory investigation of the interview process for the accounting analyst position in early 2009, Toshiba, through and including Mr. Tamura and General Counsel DiSalvo, began a campaign to force Ms. Cyphers out of the Company by retaliating against her in ways that harmed her reputation at Toshiba, hindered her opportunities for advancement, limited her earning potential, and prohibited her from returning to work from approved medical leave.

97.     As described above, Ms. Cyphers was denied a promotion. Despite her stellar performance and superior qualifications, Toshiba promoted a less qualified, less experienced male employee to a supervisory role over Ms. Cyphers.

98.     Without warning, Toshiba also dramatically reduced Ms. Cyphers' responsibilities, reassigned her duties to less senior and less qualified male contract employees, and assigned her administrative and clerical tasks that were inappropriate for

her job description.  Although administrative staff and executive assistants should have been responsible for administrative tasks, Ms. Cyphers was expected to get refreshments for staff meetings, order lunch for the staff, and order flowers for customers and employees' family members.  Similarly situated male managers in Band Level 5 were not expected to perform these administrative tasks.

99.     The responsibilities that Toshiba took away from Ms. Cyphers included recruiting and hiring, which accounted for more than 40 percent of her workload and were a critical aspect of her overall responsibilities. To assume responsibility for recruiting and hiring, Toshiba retained a male contract employee who was less experienced and less qualified than Ms. Cyphers.  Indeed, unlike Ms. Cyphers, the male contract employee had no generalist HR experience.

100.    Ms. Cyphers was also then excluded from meetings that concerned subject matter central to her role as HR Manager.  Recently hired male employees with less experience and seniority, including the new contract employee, were invited to attend and represent HR in those meetings.

101.    Also in 2009, Ms. Cyphers was humiliated in front of her colleagues when she arrived at TANE's Falls Church, Virginia, office and found that all of her files and personal effects had been moved from her office to another office one door down.  The new office shared a wall with General Counsel DiSalvo's office, while her prior office had not. Upon information and belief, Ms. Cyphers's former office remained vacant until TANE relocated to North Carolina in late October 2009.

102.    Ms. Cyphers retained present counsel in October 2009 to pursue her individual and class claims against Toshiba for gender discrimination and retaliation.

After Ms. Cyphers filed her EEOC Charge, she was further shamed and faced increased scrutiny.

103.   Once again, her office was changed without warning.  In late October 2009, when she arrived at TANE's new offices in North Carolina, Ms. Cyphers discovered that rather than the office she had been promised—an interior office, comparable in size and privacy to her office in Virginia—she was assigned an open cubicle.  This adverse action was particularly striking because Ms. Cyphers frequently handled files containing confidential personnel information, including financial information and medical records, which are appropriately dealt with in a private space—not in an open cubicle.

104.   Because of the lack of privacy in her cubicle, Ms. Cyphers was obliged to review personnel files and confidential documents in an HR room that was specifically designated for review of personnel information.  Ms. Cyphers was severely admonished, however, for leaving her cubicle to go to the private HR room, and was informed that her use of the office would be considered an "absence" from work.  Further, Ms. Cyphers was reprimanded for having confidential documents on her desk even though she had no control over when and how employees left documents in her cubicle.  On information and belief, male HR personnel and managers were not similarly criticized for using the HR room.  In fact, the contract recruiter was given a private space for his exclusive use, which he used daily.

105.   After she filed her EEOC Charge, Ms. Cyphers was subjected to unreasonably close scrutiny and discipline.  In October 2009, Mr. Tamura scolded her by e-mail for being absent from the office, even though she was authorized under Toshiba's

Relocation Policy to be absent to handle her arrangements for moving from Virginia to North Carolina, and she had notified Mr. Tamura by e-mail of her planned absence a month in advance.

106.   In addition, beginning in October 2009, Mr. Tamura regularly reviewed Ms. Cyphers's work e-mails and physically followed her around the office—so much so that her colleagues often warned her when he was in the hallway.

107.   Mr. Tamura also scrutinized, rejected, and complained to Ms. Cyphers about her appropriate requests for reimbursement for work-related mobile telephone bills and purchases with a Toshiba-issued credit card.  Similarly situated male employees used company credit cards and cell phones without such close supervision and were promptly reimbursed for work-related expenses.   Indeed, on information and belief, male employees and senior management at Toshiba used company credit cards to pay for female companionship without facing scrutiny or discipline for doing so.

108.   Rather than endure such intense scrutiny, Ms. Cyphers returned the company cell phone and credit card.  Mr. Tamura then reprimanded Ms. Cyphers for returning these items without prior discussion, calling her actions "unprofessional," "offensive," and "demeaning."

109.   In early June 2010, TANE began conducting employee performance reviews for the first time.  On information and belief, Ms. Cyphers was the first and only TANE employee to receive performance goals in June 2010.  The goals set for her were retaliatory and discriminatory.

110.   On June 2, 2010, Ms. Cyphers was given a new job description reflecting dramatically reduced responsibilities.   For example, her stated responsibilities now

included administering the payroll and "keep[ing] an eye on the prevalence of novel influenza and prepar[ing] appropriate amounts of sanitary goods at the office."

111.    At or about the same time, Toshiba assigned Ms. Cyphers goals to be completed by the end of June 2010 that could not reasonably be completed within the month.  For example, Ms. Cyphers was expected to finish setting up and implementing a Human Resources Information System ("HRIS") in less than two weeks.  The HRIS was a complicated system that had been in development with Toshiba America Inc. since Ms. Cyphers arrived two years earlier.  Toshiba's management had never before established a deadline for the HRIS project.   June 2010, when she received her first performance review goals, was the first time that Ms. Cyphers was given a deadline for this project. Directing Ms. Cyphers to complete the HRIS implementation in less than 14 days was unreasonable and punitive.

112.    As a result of Toshiba's discriminatory conduct and relation, Ms. Cyphers developed work-related stress, anxiety, and depression. By early July 2010, Ms. Cyphers was forced to take a leave of absence to address her symptoms.

113.    On December 1, 2010, upon the recommendation of her physicians, Ms. Cyphers requested to extend her medical leave of absence through January 7, 2011.  On December 7, 2010, the Benefits Administrator of Toshiba America, Inc. informed her that her extended leave of absence was approved by TANE's management until December 31, 2010.

114.    Ms. Cyphers returned to work on December 30, 2010.   During the afternoon of January 3, 2011, Ms. Cyphers walked past the office of the new Vice President of TANE, Duncan Kane, as he was loudly yelling about Ms. Cyphers return to

work, stating, "I don't care. She can't come back."

115. Mr Kane then called Ms. Cyphers to a conference room to meet with him Manager of Finance and Accounting. In the meeting, Mr. Kane berated Ms. Cyphers for returning to work and stated that he "did not even know what [her] job would be." Ms. Cyphers explained that, since her leave of absence was only approved until December 31, 2010, her return to work on December 30, 2010 was entirely predictable and justified.

116. In response to Ms. Cyphers's explanation, Mr. Kane loudly and angrily demanded that she leave immediately and not return "until further notice." Ms. Cyphers promptly collected her belongings and exited TANE.

117. Mr. Kane spoke so emphatically that other TANE employees throughout the office overheard this admonition. Mr. Kane's actions constituted further humiliation of Ms. Cyphers in retaliation for filing her EEOC Charge.

## VIII. COUNTS

### COUNT I

### VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### 42 U.S.C. § 2000e, *et seq,*

### GENDER-BASED DISCRIMINATION
### (On Behalf of the Class Representative and the Class)

118. Class Representative Cyphers realleges and incorporates by reference each allegation contained in all of the previous paragraphs of this Complaint as set forth herein.

119. Toshiba has discriminated against the Class Representative and all members of the proposed Class by treating them differently from and less favorably than similarly situated male employees and by subjecting them to discriminatory assignments

to less desirable jobs, discriminatory applications of employment policies and practices, disparate terms and conditions of employment, and other forms of discrimination in violation of Title VII.

120.    Toshiba's conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of rights of the Class Representative and the members of the proposed Class.

121.    As a direct and proximate result of Toshiba's conduct, the Class Representative and the members of the proposed Class were damaged and suffered economic losses, mental and emotional harm, anguish, and humiliation.

122.    Toshiba's policies, practices and/or procedures have produced a disparate impact against the Class Representative and the members of the proposed Class with respect to the terms and conditions of their employment.

123.    Because of the continuous and persistent nature of Toshiba's discriminatory conduct, throughout the employment of the Class Representative and the members of the proposed Class, the continuing violation doctrine applies to all of the violations alleged herein.

124.    By reason of the discrimination suffered at Toshiba, Class Representative Cyphers and the members of the proposed Class are entitled to all legal and equitable remedies available under Title VII.

125.    Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

## COUNT II

**GENDER DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq.***

## DISCRIMINATORY DENIAL OF PAY
### (On Behalf of the Class Representative and the Class)

126.   Class Representative Cyphers realleges and incorporates by reference each allegation contained in all of the previous paragraphs of this Complaint as if fully set forth herein.

127.   Toshiba, an employer of Class Representative and the Class within the meaning of Title VII, has discriminated against the Class Representative and the Class by treating them differently from, and less favorably than, similarly situated males by subjecting them to discriminatory pay in violation of Title VII.

128.   Toshiba's policies, practices and/or procedures have produced a disparate impact on the Class Representative and the Class with respect to their terms and conditions of employment.

129.   Toshiba's conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of the Class Representative and the Class.

130.   Because of the continuous and persistent nature of Toshiba's discriminatory conduct, throughout the employment of the Class Representative and the members of the proposed Class, the continuing violation doctrine applies to all of the violations alleged herein.

131.   As a result of Toshiba's conduct alleged in this Complaint, the Class Representative and the Class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss.

132.   By reason of Toshiba's discrimination, the Class Representative and the Class are entitled to all legal and equitable remedies available for violations of Title VII, including an award of punitive damages.

133.   Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

## COUNT III

### GENDER DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq.*

#### DISCRIMINATORY DENIAL OF PROMOTION
(On Behalf of the Class Representative and the Class)

134.   Class Representative Cyphers realleges and incorporates by reference each allegation contained in all of the previous paragraphs of this Complaint.

135.   Toshiba, an employer of Class Representative and the Class within the meaning of Title VII, has discriminated against the Class Representative and the Class by systematically treating them differently from, and less favorably than, similarly situated males by subjecting them to discriminatory denials of promotions.

136.   Toshiba's policies, practices and/or procedures have produced a disparate impact on the Class Representative and the Class with respect to their terms and conditions of employment.

137.   Toshiba's conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of the Class Representative and the Class.

138.   Because of the continuous and persistent nature of Toshiba's discriminatory conduct, throughout the employment of the Class Representative and the members of the proposed Class, the continuing violation doctrine applies to all of the violations alleged herein.

139.   As a result of Toshiba's conduct alleged in this Complaint, the Class Representative and the Class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial losses.

140.   By reason of Toshiba's discrimination, the Class Representative and the Class are entitled to all legal and equitable remedies available for violations of Title VII, including an award of punitive damages.

141.   Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

## COUNT IV

### VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938, AS AMENDED BY THE EQUAL PAY ACT OF 1963 ("EQUAL PAY ACT") 29 U.S.C. § 206, *et seq.*

### DISCRIMINATORY DENIAL OF EQUAL PAY (On Behalf of the Class Representative and the Class)

142.   Class Representative Cyphers realleges and incorporates by reference each allegation contained in all of the previous paragraphs of this Complaint as if fully set forth herein.

143.   Toshiba, an employer of the Class Representative and the Class within the meaning of the Equal Pay Act, has discriminated against Class Representative Cyphers and the Class by providing them with lower pay than similarly situated male employees on the basis of their female gender, even though Plaintiff and all others similarly situated performed duties requiring the same skill, effort, and responsibility as the duties of male employees.

144.   The differential in pay between male and female employees was not due to seniority, merit, quantity or quality of production, but was due to gender.

145.   Toshiba caused, attempted to cause, or contributed to the continuation of wage rate discrimination based on gender, in violation of the EPA.

146.   Toshiba knew, should have known, or showed reckless disregard for, the fact that its conduct was in violation of the EPA.

147.   Class Representative Cyphers expressly opts in to this Count.

148.   As a direct and proximate result of the Toshiba's actions, the Class Representative and the Class suffered injury and monetary damages—including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, expenses, and costs—and are entitled to all available legal and equitable remedies.

## COUNT V

### RETALIATION
### IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,
### 42 U.S.C. § 2000e, *et seq.*, AS AMENDED
### (On Behalf of Plaintiff Elaine Cyphers)

149.   Plaintiff Cyphers realleges and incorporates by reference each allegation contained in all of the previous paragraphs of this Complaint as if fully set forth herein.

150.   Toshiba retaliated against Plaintiff Cyphers in violation of Title VII by, *inter alia*: threatening her for giving a statement during a complaint investigation; stripping her of her primary job responsibilities; reassigning her to menial and administrative tasks; excluding her from critical meetings; revoking her private office space; unreasonably monitoring her communications and physical movements; subjecting her to unreasonably intense scrutiny; failing to promote her when she was the most qualified candidate; and prohibiting her from returning to work or assume her job responsibilities as an HR Manager.

151.   These retaliatory measures were imposed in direct response to Plaintiff Cyphers's participating and supporting an investigation of discrimination at Toshiba; seeking representation concerning her claims of discrimination against Toshiba; her filing and/or prospective filing of her individual and class-wide charges of discrimination with

the EEOC; and/or; the filing and/or prospective filing of her Complaint in federal district court alleging individual and class-wide charges of discrimination against Toshiba.

152.    A reasonable employee would find these retaliatory actions taken against Plaintiff Cyphers to be materially adverse.

153.    Toshiba acted willfully, intentionally, and with reckless disregard to Plaintiff Cyphers's rights.

154.    Toshiba's retaliatory actions and/or failure to act have caused Ms. Cyphers humiliation, embarrassment, physical and emotional distress, mental anguish, and economic loss.

155.    Plaintiff Cyphers is therefore entitled to all legal and equitable remedies, as well as punitive damages.

156.    Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

**COUNT VI**

**RETALIATION IN
VIOLATION OF THE EQUAL PAY ACT,
29 U.S.C. § 215(a)(3)
(On Behalf of Plaintiff Elaine Cyphers)**

157.    Plaintiff Cyphers realleges and incorporates by reference each allegation contained in all of the previous paragraphs of this Complaint as if fully set forth herein.

158.    Plaintiff Cyphers regularly complained to her superiors about gender discrimination at Toshiba and the failure to pay women, including herself, on an equal basis with similarly situated men.   In retaliation, Toshiba took adverse employment actions against her, including failing to provide her equal pay or promote her.

159.    Toshiba's conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff Cyphers, entitling her to

punitive damages.

160.   Because of Toshiba's conduct alleged in this Complaint, Plaintiff Cyphers has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

161.   By reason of Toshiba's conduct as alleged herein, Plaintiff Cyphers is entitled to all legal and equitable remedies including doubled compensatory awards for all willful violations.

162.   Attorneys' fees should be awarded under 29 U.S.C. §§ 216, *et seq.*

## COUNT VII

### GENDER DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq.*

### TERMINATION
#### (On Behalf of Plaintiff Elaine Cyphers)

163.   Plaintiff Cyphers realleges and incorporates by reference each allegation contained in all of the previous paragraphs of this Complaint as if full yset forth herein.

164.   Plaintiff Cyphers, a female, is a member of a protected class under Title VII.

165.   Plaintiff Cyphers was and is qualified for the position she held as HR Manager.

166.   Toshiba took adverse employment actions against Ms. Cyphers, including denying her the opportunity to return to work.

167.   Toshiba acted willfully, intentionally, and with reckless disregard to Plaintiff Cyphers's rights.

168.   The adverse employment action Toshiba subjected Ms. Cyphers to occurred under circumstances gives rise to an inference of discriminatory intent.

169.   There is no legitimate, nondiscriminatory reason for Toshiba's termination of Ms. Cyphers.

170.   Because of Toshiba's conduct alleged in this Complaint, Plaintiff Cyphers has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

171.   By reason of Toshiba's conduct as alleged herein, Plaintiff Cyphers is entitled to all legal and equitable remedies including doubled compensatory awards for all willful violations.

172.   Attorneys' fees should be awarded under 29 U.S.C. §§ 216, *et seq*.

<u>COUNT VIII</u>

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(On Behalf of Plaintiff Elaine Cyphers)**

173.   Plaintiff Cyphers realleges and incorporates by reference each allegation contained in all of the previous paragraphs of this Complaint.

174.   As a result of Toshiba's disparate treatment of Plaintiff Cyphers, including the gender discrimination, marginalization, and unlawful retaliation described above, Plaintiff Cyphers has suffered humiliation and severe emotional distress.

175.   Toshiba acted intentionally in threatening Plaintiff Cyphers when she complained about discrimination, disparaging her in front of her office employees and professional peers, and disparately treating Plaintiff Cyphers in the terms and conditions of her employment

176.   Toshiba's conduct has been so extreme and outrageous in degree and character as to go beyond all possible bounds of decency and should be considered utterly intolerable in a civilized community.

177.   Toshiba's actions were without just cause and excuse.

178.   As a direct and proximate result of Toshiba's intentional and reckless conduct, Plaintiff Cyphers suffered severe emotional distress.

179.   Plaintiff Cyphers is therefore entitled to all available legal and equitable remedies, including punitive damages.

## IX.   PRAYER FOR RELIEF

WHEREFORE, Class Representative Cyphers, on behalf of herself and the members of the Class she seeks to represent, requests the following relief:

A.   Certification of this case as a class action maintainable under Federal Rules of Civil Procedure Rule 23 (a), (b)(2) and/or (b)(3), on behalf of the proposed Plaintiff Class; designation of the proposed Class Representative as representative of this Class; and designation of Plaintiff's counsel of record as Class Counsel;

B.   A declaratory judgment that Toshiba's employment policies, practices and/or procedures challenged herein are illegal and in violation of Title VII;

C.   A permanent injunction against Toshiba and its partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with them, from engaging in the unlawful practices, policies, customs, usages, and gender discrimination set forth herein;

D.   An Order requiring Toshiba to initiate and implement programs that will (i) provide equal employment opportunities for female employees; (ii) remedy the effects

K. An award of compensatory, nominal, and punitive damages to Class Representative Cyphers and the Class in an amount not less than $100,000,000.00;

L. An award of litigation costs and expenses, including reasonable attorneys' fees, to the Class Representatives and the Class;

M. Prejudgment interest;

N. Such other and further relief as the Court may deem just and proper; and

O. Retention of jurisdiction by the Court until such time as the Court is satisfied that Toshiba has remedied the practices, policies and/or procedures complained of herein and that Toshiba's practices, policies and procedures are in full compliance with the law.

## X. JURY DEMAND

The Class Representative demands trial by jury of all issues triable of right to a jury.

January 31, 2011     Respectfully submitted,

_____
Steven L. Wittels, NY Bar No. 2004635
Jeremy Heisler, NY Bar No. 1653484
SANFORD WITTELS & HEISLER, LLP
950 Third Ave, 10th Floor
New York, NY 10022
Telephone: (646) 723-2947
Facsimile: (646) 723-2948
jheisler@swhlegal.com

_____
David Sanford, DC Bar No. 457933
Katherine M. Kimpel, DC Bar No. 493028
Kyle Chadwick, DC Bar No. 453003
Carmen Byrd, MD Bar
SANFORD WITTELS & HEISLER, LLP

1666 Connecticut Ave NW, Suite 310
Washington, DC 20009
Telephone: (202) 742-7780
Facsimile: (202) 742-7776
dsanford@swhlegal.com

***Counsel for Plaintiff, Elaine Cyphers***